UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WESTLAND SHOPPING CENTER, L.P.                                                                PLAINTIFF

VS.                                                                            CIVIL ACTION NO. 3:06cv00721-DPJ-JCS

CHERNIN'S SHOE OUTLET, LLC, et al.                                                          DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

This breach of contract case is before the Court on Plaintiff Westland Shopping Center, L.P.'s motion for partial summary judgment. The Court, having fully considered the parties' submissions and the applicable law, finds that Plaintiff's motion should be granted.

**I.     Facts/Procedural History**

Defendant Chernin's Shoe Outlet, LLC ("Chernin's") is a national discount footwear retailer. Plaintiff Westland Shopping Center, L.P. ("Westland") owns Westland Plaza Shopping Center in Jackson, Mississippi. In mid-2005, Chernin's managing partner visited the shopping center and met with Westland's real estate agent to discuss a vacant retail space. At the time, a large regional grocery store was the anchor tenant in the shopping center, and there is a dispute as to whether Plaintiff's real estate agent touted the proximity of the grocery store. There appears to be no dispute, however, that the grocer had, by mid-2005, filed for protection in bankruptcy, or that by September 30, 2005, the grocer had abandoned its store in the shopping center. Approximately three months later, in early January 2006, the parties signed the subject lease agreement ("Lease Agreement").

Two principal disputes arose out of the Lease Agreement. First, Chernin's claims that it learned of the grocer's decision to vacate the premises after Chernin's took possession of the property in March 2006. Accordingly, Chernin's asserts that Westland misrepresented the viability of the grocery store and fraudulently induced it to sign the Lease Agreement. Second, Westland would not allow Chernin's to use certain signage on the front of the store. When Chernin's opened its doors for business in March 2006, Westland rejected a temporary banner above the store advertising shoes for as low as $9.99. The dispute over the store's sign resumed in June 2006 when Westland rejected Chernin's proposed permanent sign again because it mentioned the $9.99 price. Although Chernin's was aware of both of these issues no later than March 2006, it signed an "Estoppel Certificate" on April 10, 2006. Ultimately, Chernin's decided to close its doors, and it ceased paying rent after July 2006. Westland has moved for partial summary judgment on liability and on Chernin's counterclaims for misrepresentation and breach of contract.

## II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is not a sufficient response to a motion for summary judgment. *F.D.I.C. v. Brewer*, 823 F. Supp. 1341, 1347 (S.D. Miss. 1993) (citing *Washington v. Armstrong World Indus., Inc.*, 839 F.3d 1121, 1122–23 (5th Cir. 1988)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc*., 530 U.S. 133, 150 (2000).

**III.   Analysis**

Article IX of the Lease Agreement, entitled "Default by Tenant," provides in pertinent part:

> **SECTION 9.1** Default. Tenant shall be in default hereunder if (a) Tenant fails to pay when due Minimum Annual Rent and any other sum due under this Lease and such default shall continue for more than five (5) business days after written notice from Landlord to Tenant; or . . . (c) Tenant fails to pay when due the Minimum Annual Rent and any other sum payable under this Lease three (3) or more times in any period of twelve (12) consecutive months[.]

There is no dispute that Chernin's ceased paying rent after July 2006. However, Chernin's claims that it was relieved of any obligation to pay rent under the Lease Agreement because Westland fraudulently induced it to sign the Lease Agreement and thereafter breached its terms by unreasonably denying Chernin's requested signage.[1]

    A.    <u>Fraudulent Inducement</u>

The parties dispute whether Westland misrepresented the viability of a regional grocer during the formation of the contract. For purposes of this summary judgment motion, the Court will assume that it did. *Little*, 37 F.3d at 1075. Nevertheless, even "assuming the fact of fraud, a contract obligation obtained by fraudulent representation is not void, but voidable. Upon discovery thereof, the one defrauded must act *promptly and finally* to repudiate the agreement; however, a continuance to ratify the contract terms constitutes a waiver." *Turner v. Wakefield*, 481 So. 2d 846, 848-49 (Miss. 1985) (emphasis added).

In this case, Chernin's argues that it first learned of the grocer's departure when it opened its store in March 2006. Chernin's District Manager, Mark Davis, stated in his affidavit that he immediately questioned other retailers in the shopping center and learned that sales had diminished following the loss of the grocer. Chernin's attorney then contacted Westland to express Chernin's displeasure and was informed on April 7, 2006 that Westland expected to

---

[1] Westland disputes Chernin's claim that it properly pled a claim of fraudulent inducement, but the Court will assume for purposes of this motion that Chernin's pled the claim as it now asserts.

4

replace the grocery store with another grocer by the end of the month.[2]  Chernin's then elected to give "its Mississippi store some time to succeed."  Chernin's Reply to Rebuttal [24] at 4.

On April 10, 2006, after its attorney complained of the alleged misrepresentations, Chernin's executed an Estoppel Certificate that stated, "Tenant has no counterclaims, defenses, credits, deductions, abatements, or offsets to its obligations under the Lease or to the enforcement of any of the Landlord's rights thereunder."  By the end of June 2006, Chernin's counsel again contacted Westland, complaining that Westland misled Chernin's into believing that the regional grocer would be the anchor tenant.  Various communications followed, and Chernin's appears to have abandoned the property sometime in August of that year.  No rent was paid after July 2006.  The Court finds as a matter of law that Chernin's actions ratified the contract.

As an initial point, Westland's alleged representations about replacing the grocer do not excuse Chernin's ratification of the Lease Agreement first because Chernin's Counterclaim fails to mention any post-lease misrepresentations.  Fraud must be pled with specificity, and in this case, the alleged post-lease fraudulent conduct is not even referenced.  FED. R. CIV. P. 9(b). Moreover, any claims related to Westland's statements regarding efforts to sign a new tenant would fail as promises of future performance.  *See Skrmetta v. Bayview Yacht Club, Inc.*, 806 So. 2d 1120, 1124 (Miss. 2002) (noting that "the first element of misrepresentation must concern *a past or present fact* as contrasted with *a promise of future conduct*"); *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992).[3]

---

[2]Westland's anticipated signing date with the replacement tenant proved incorrect, but it did ultimately lease the premises to the other grocer later in 2006.

[3]The absence of any fraud claim and the future nature of the alleged representation distinguish this case from *Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 641 (Miss. 1996) (finding no ratification of fraud claim).

Accordingly, the question is whether Chernin's actions ratified the contract as a matter of law. On this issue, Chernin's sole argument, for which it cited no authority, is that it complained immediately. This fact is of no moment. Like Chernin's, the plaintiff in *Turner v. Wakefield* also complained through an attorney immediately upon concluding that he had been fraudulently induced to enter the contract. 481 So. 2d at 849. Yet, the plaintiff in that case continued to make payments and was deemed to have ratified the voidable contract as a matter of law. *Id.*

Similarly, in *Edwards v. Wurster Oil Co.*, the plaintiff immediately complained of the alleged misrepresentation but continued to perform under the contract for a period of eight months. 688 So. 2d 772, 776 (Miss. 1997). Although not addressed as a mater of law, the Mississippi Supreme Court held that "by continuing to remit the entire commission and accepting one-half of their commission from Wurster Oil, the Edwardses' accepted and ratified their contract with Wurster Oil . . . ." *Id.* at 777. Complaining is simply insufficient. Prompt and final repudiation is required.

> In one of the earliest cases addressing ratification, the Mississippi Supreme Court stated:
>
> Where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; and acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm.

*Miss. State Hwy. Dept. v. Bethlehem Baptist Church*, 99 So. 2d 221, 222 (Miss. 1957) (citing *Crabb v. Wilkinson*, 32 So. 2d 356, 357 (Miss. 1947) (cited with approval in *Barber v. Balboa Life Ins. Co.*, 747 So. 2d 863, 870 (Miss. Ct. App. 1999))). Since then, numerous cases have found actions constituting ratification as a mater of law. *See, e.g., Fairley v. Turan-Foley*

*Mitsubishi*, 203 F.3d 827 (5th Cir. 1999); *Turner*, 481 So. 2d at 849; *Gardner v. Little*, 755 So. 2d 1273, 1276 (Miss. Ct. App. 2000); *Barber*, 747 So. 2d at 872.

Here, assuming Chernin's could prove fraudulent inducement as alleged, it would have had the right to repudiate the contract and demand damages in March 2006. Instead, it signed the Estoppel Certificate and continued to perform under the Lease Agreement in hopes that the store would succeed. Chernin's chosen path highlights the policy reasons behind the waiver rule. As the Mississippi Supreme Court stated in *Turner*,

> If one elects to affirm the agreement, after full knowledge with the truth respecting the false and fraudulent representation, and thereafter continues to carry it out and receive its benefits, he may not thereafter maintain an action in damages for deceit, because this would constitute a ratification of the agreement and condemnation of the fraud; *otherwise one might, with knowledge of fraud, speculate upon the advantages or disadvantages of an agreement, receive its benefits, and thereafter repudiate all its obligations*.

481 So. 2d at 848 (emphasis added) (citing *Stoner v. Marshall*, 358 P.2d 1021, 1022-23 (Colo. 1961)). Chernin's failed to promptly and finally repudiate the Lease Agreement.[4]

---

[4] The Court finds that the Estoppel Certificate is relevant to the extent it provides additional evidence that Chernin's ratified the Lease Agreement. However, Westland claims that the certificate alone provides grounds for estoppel. Westland cites no authority to support its argument, and Chernin's cites no authority in response. The Court's own research indicates that the effect of estoppel certificates on a signatory's right to bring suit is not well settled. *See, e.g., Servco Pac., Inc. v. Dods*, 193 F. Supp. 2d 1183, 1191 (D. Haw. 2002) (holding that estoppel certificate did not waive tenant's claims against landlord); *In re Caldor, Inc.-NY*, 217 B.R. 121, 133 (Banckr. S.D.N.Y. 1998) ("The fact that Caldor executed the Estoppel Certificate does not preclude it as a matter of law from seeking damages for continuing breaches of the Lease arising prior to the Lease assignment."). Because this argument has not been fully developed, and is otherwise unnecessary in light of the Court's ruling, the Court declines to address the issue.

B.  Breach of Lease Agreement

Chernin's also argues that its duty to perform under the Lease Agreement was relieved when Westland failed to reasonably approve Chernin's desired signs.  The Lease Agreement states in relevant part:

> Tenant may erect and maintain signature of its standard logo, design, color and size on the exterior façade of the Leased Premises in accordance with Exhibit C and subject to Landlord's prior written consent and approval, which shall not be unreasonably withheld. Tenant shall submit to Landlord detailed drawings of its sign for review and approval by Landlord prior to erecting or altering said sign in the Leased Premises.

Section 3.4.  Further, Exhibit "C" to the Lease Agreement, entitled "Design Criteria for Tenant's Sign," states in pertinent part:

> Tenant shall submit separate drawings and specifications, in quadruplicate, including colors, for all its proposed sign work . . . .  Within a reasonable time after the receipt of such drawings and specifications, Landlord shall return one set thereof to Tenant with its approval and/or any suggested modifications thereof, and if Tenant shall fail to take exception thereto by written notice to Landlord given within ten (10) days from Tenant's receipt of the suggested modifications from Landlord, Tenant shall be deemed to have agreed to and approved all such suggested modifications.

Pursuant to the agreement, Chernin's was required to obtain Westland's "prior written consent and approval, which shall not be unreasonably withheld."  Chernin's does not dispute Westland's statement of fact that Chernin's failed to submit drawings for approval until June 2, 2006.  Similarly, Chernin's concedes that it failed to take exception to the suggested modifications in writing within ten (10) days.  Accordingly, pursuant to the terms of the agreement, Chernin's agreed to and approved Westland's modifications.  Chernin's has cited no authority for its contention that Westland breached the contract, and there are no material facts in dispute.  The Court finds as a matter of law that Westland did not breach the Lease Agreement.

Accordingly, Westland's actions with respect to the sign provided no grounds for avoiding the terms of the contract.

Finally, even if Westland acted unreasonably in failing to approve Chernin's sign, Chernin's waived such a breach. The flap over the sign first materialized in March 2006 when Westland would not allow Chernin's to place a temporary sign over its store that included the $9.99 price. Thus, Chernin's knew in March 2006 that Westland would not approve its desired sign. Chernin's nonetheless continued to perform under the contract until submitting a formal design in June 2006. Even when Westland rejected this formal submission, Chernin's continued operations through some point in August 2006. Like fraudulent inducement, a material breach may be waived if the contract is ratified following discovery of the breach. *See, e.g., Williamson v. Metzger*, 379 So. 2d 1227, 1231 (Miss. 1980); *Estate of Reaves v. Owen*, 744 So. 2d 799, 802 (Miss. Ct. App. 1999) ("By continuing payments in light of the purported breach, Reaves waived his right to assert breach as a defense to the contract.").

**IV.    Conclusion**

The Court finds that Westland's motion for partial summary judgment as to Chernin's counterclaims is well taken and should be granted. It follows that Chernin's was not relieved of its duty to perform under the Lease Agreement, and Westland's motion for partial summary judgment on liability is also due to be granted.

**SO ORDERED AND ADJUDGED** this the 16th day of November, 2007.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE